**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA,**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| ADAM CURRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 26-CV-00131 |
| | ) | |
| OFFICER PAUL SHANE, OFFICER GEORGE | ) | |
| DICKERSON, OFFICER CHRISTOPHER | ) | |
| WILSON, DETECTIVE CORPORAL JORDAN | ) | |
| BILLUPS-TAYLOR, and TOWN OF WINFIELD, | ) | |
| INDIANA, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

NOW COMES the Plaintiff, ADAM CURRY, and alleges the following against the Defendants, OFFICER PAUL SHANE, OFFICER GEORGE DICKERSON, OFFICER CHRISTOPHER WILSON, CAPTAIN JORDAN BILLUPS-TAYLOR, and TOWN OF WINFIELD (hereinafter "Defendants"):

**Jurisdiction**

1.      This action is brought against Defendants pursuant to Section 1983 of the Ku Klux Klan Act of 1871, 42 U.S.C. § 1983, as amended.

2.      Jurisdiction of this Court arises under 28 U.S.C § 1331 because the Complaint asserts federal claims and requires the resolution of substantial questions of federal law.

3.      Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events and omissions complained of took place in this District, specifically, at or near the intersection of East 106th Avenue and Randolph Street, in Winfield, Indiana.

1

**Parties**

4.      Plaintiff Adam Curry at all relevant times resided in the State of Indiana.

5.      Defendant Paul Shane was at all relevant times an officer in the Winfield Police Department. He is sued in his individual capacity.

6.      Defendant George Dickerson was at all relevant times an officer in the Winfield Police Department. He is sued in his individual capacity.

7.      Defendant Christopher Wilson was at all relevant times an officer in the Winfield Police Department. He is sued in his individual capacity.

8.      Defendant Jordan Billups-Taylor (hereinafter "Det. Cpl. Billups") was at all relevant times a detective corporal in the Winfield Police Department. He is sued in his individual capacity.

9.      Defendant Town of Winfield, Indiana, is a municipal corporation.

**General Allegations**

10.      On June 9, 2024, Plaintiff Adam Curry was subjected to a traffic stop by Defendant Ofc. Shane. Plaintiff was operating his pickup truck with a passenger seated in the front passenger's seat.

11.      Upon approach, Defendant Ofc. Shane alleged that Plaintiff had been "flying" past him and that he was unable to obtain a radar speed reading. Defendant Ofc. Shane then questioned Plaintiff.

12.      Defendant Ofc. Shane returned to his patrol car. While still in his patrol vehicle, Defendant Ofc. Shane radioed dispatch, stating he would "pull [Curry] out" of his truck and requested backup.

2

13.     Defendant Ofc. Shane then exited his patrol car and approached Plaintiff's car. Defendants Ofc. Dickerson and Ofc. Wilson arrived moments later and also approached Plaintiff's car.

14.     Plaintiff complied with orders to exit the vehicle and leaned against the bed of his truck.  When asked by Defendant Ofc. Shane to submit to a field sobriety test, Plaintiff declined and instead extended his hands, saying that the officers should place handcuffs on him and take him to jail.

15.     Defendant Ofc. Wilson began to place handcuffs on Plaintiff when Defendant Ofc. Shane shoved Plaintiff face-first into the bed of the pickup truck, causing a laceration in Plaintiff's chin. Defendant Det. Cpl. Billups also arrived at the scene around this time.

16.     Plaintiff was tased by Defendant Ofc. Dickerson, fell to the ground, and was tased again approximately thirty seconds later. Plaintiff was placed in a prone position on his stomach, and had his hands pinned behind his back by Defendants Ofc. Wilson and Ofc. Shane, who fastened handcuffs.  Plaintiff's hands were securely handcuffed behind his back such that he was unable to pose any realistic physical threat to the individual Defendant officers.

17.     Defendants Ofc. Dickerson and Det. Cpl. Billups confronted the passenger in Plaintiff's vehicle, who expressed concern about the individual Defendants' abusive, illegal treatment of Plaintiff. Defendant Det. Cpl. Billups replied, "Well when you fight with my officers, I don't give a fuck. . . .  He fights with my officers . . . ."  Ofc. Dickerson completed the sentence for Det. Cpl. Billups, "he get [*sic*] his ass beat."

18.     While Plaintiff was still handcuffed and helplessly lying on the ground, Defendant Ofc. Dickerson punched Plaintiff on his body multiple times, while Defendant Det. Cpl. Billups kicked Plaintiff.

19.    One of the Defendant officers then punched Plaintiff on the side of his head with enough force that Plaintiff's head snapped to the side. Defendant Det. Cpl. Billups then used his fist to forcefully hold Plaintiff's head on the ground.

20.    While Defendant Ofc. Wilson retrieved leg cuffs, Defendant Det. Cpl. Billups placed his foot on Plaintiff's back to keep him down.

21.    Plaintiff complained that he could not breathe, which prompted Defendant Ofc. Shane to roll Plaintiff over to his side. Shortly after, Plaintiff asked to be rolled onto his back. Receiving no response, Plaintiff asked to be sat upright. Defendants refused.

22.    While further speaking to Plaintiff's passenger at the scene, Det. Cpl. Billups stated "You bring that fucking turd to our town again, he will go back in jail. For whatever reason. I will find a reason . . . to take him to jail. Keep bringing this piece of shit to our town, he'll go straight back to jail. Alright?"

23.    Plaintiff then lost consciousness and became limp. Despite Defendant Ofc. Shane shaking and pulling him, Plaintiff remained limp.

24.    Plaintiff's body began convulsing and twitching, with increasing severity, consistent with Plaintiff sustaining a traumatic brain injury from being punched in the face. Plaintiff continued to convulse on the ground while the individual Defendants officers stood idly by.  Plaintiff's passenger begged officers to help Plaintiff.  Defendant Det. Cpl. Billups blithely dismissed this concern, stating that Plaintiff was acting.

25.    Plaintiff began to make choking and gagging sounds.

26.    EMS personnel arrived and rolled Plaintiff onto his back.  Plaintiff was still unconscious and unresponsive to a sternum rub. After a medic lifted Plaintiff's eyelid, he briefly jolted awake and exhaled deeply.

4

27.     Plaintiff was lifted to a seated position and then stood up but was almost immediately thrown back to the ground. During this process, Plaintiff's handcuffs slipped loose, leading officers to again unnecessarily tase him and reapply the handcuffs. Officers then placed Plaintiff in leg irons.

28.     While Plaintiff was lying prone with his legs crossed behind him, Ofc. Wilson sat on Plaintiff's legs and told him, "I'm going to break your leg if you keep moving it." Plaintiff pleaded for Defendant Ofc. Wilson to get off his legs and cried out that he felt his knee was being injured.

29.     Plaintiff was injected with an unknown substance, likely a sedative, by EMS. Shortly after, he was rolled onto his side and then stood up and seated on a stretcher. Plaintiff then appeared to lose consciousness again.

30.     After being seen at St. Mary's Hospital, Defendant Ofc. Shane transported Plaintiff to Lake County Jail.  Plaintiff groaned multiple times. After one such groan, Defendant Ofc. Shane asked if Plaintiff was "okay back there." Plaintiff gave no response.

<u>**Count I**</u>
**Section 1983 Excessive Force and Failure to Protect Claim Against**
**Defendants Officer Shane, Officer Dickerson,**
**Officer Wilson, and Detective Corporal Billups**

31.     Plaintiff repeats, realleges and incorporates the foregoing paragraphs as though fully stated within this Count.

32.     At the time and place detailed above, Defendants Shane, Dickerson, Wilson, and Billups, while acting under the color of law, engaged in unnecessary, excessive, and objectively unreasonable force against Plaintiff, when there were no reasonable grounds to do so.

33.      Plaintiff's actions did not justify the use of unnecessary and excessive force by these individual Defendants.

5

34.    Furthermore, the individual Defendant officers stood by while their fellow officers engaged in this excessive force, yet took no steps to stop the excessive force though they had the opportunity and duty to do so.

35.    The individual Defendants' actions were malicious, willful and wanton, and constituted a reckless and deliberate indifference to Plaintiff's constitutionally protected rights under the Fourth Amendment to the U.S. Constitution, while acting under the color of law.

36.    As a direct and proximate result of the aforementioned actions and/or omissions of the individual Defendants, Plaintiff was deprived of the rights, privileges, and immunities guaranteed by the Fourth Amendment to the U.S. Constitution, namely, Plaintiff was subjected to an unreasonable use of force.

37.    In addition, as a direct and proximate result of the aforementioned actions and/or omissions of the individual Defendants, Plaintiff was injured internally, externally and otherwise, both temporarily and permanently. During the period of time after he was brutalized, Plaintiff suffered great pain and fear, due to the wounds suffered as a result of Defendants' actions.

WHEREFORE, Plaintiff demands judgment against Defendants Shane, Dickerson, Wilson, and Billups, and further, an award of compensatory damages, punitive damages, costs and attorneys' fees, prejudgment interest, and any additional relief this Court deems equitable and just.

**Count II**
**Section 1983 *Monell* Custom or Practice Claim Against**
**Defendant Town of Winfield**

38.    Plaintiff repeats, realleges and incorporates the foregoing paragraphs as though fully stated within this Count.

39.    On information and belief, at all relevant times, the Town of Winfield maintained a widespread or longstanding practice or custom of its police officers engaging in excessive force

to punish individuals who were being placed under arrest for purported resistance to arrest or purported fighting with officers.

40.    On information and belief, this widespread practice or custom caused the deprivation of Plaintiff's Fourth Amendment rights by the individual defendant officers as described above, that is, the Town of Winfield's official policy or widespread or longstanding practice or custom was so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused Plaintiff's injury.

41.    On information and belief, the Defendant Town of Winfield's practice or custom constituted deliberate indifference to the constitutional rights of Plaintiff.

42.    On information and belief, Defendant Town of Winfield subjected Plaintiff to these deprivations of his constitutional rights purposefully and/or knowingly.

43.    Plaintiff was injured as a direct and proximate result of Defendant Town of Winfield's actions.

WHEREFORE, Plaintiff demands judgment against Defendant City of Winfield and further demands an award of compensatory damages, costs, prejudgment interest, and attorneys' fees against Defendant Town of Winfield, and any additional relief this Court deems equitable and just.

### JURY DEMAND

Plaintiff demands trial by jury.

Respectfully Submitted,


/s/ Jeffrey D. Naffziger
Jeffrey D. Naffziger

Jeffrey D. Naffziger (IN Bar No. 30057-45)
O'Connor Law Firm, Ltd.
100 S. Wacker Drive, Suite 350
Chicago, Illinois 60606
(312) 906-7609
jnaffziger@koconnorlaw.com
firm@koconnorlaw.com