**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

ADAM CURRY,

Plaintiff,

v.

OFFICER PAUL SHANE; OFFICER GEORGE DICKERSON; OFFICER CHRISTOPHER WILSON; DETECTIVE CORPORAL JORDAN BILLUPS-TAYLOR; and TOWN OF WINFIELD, INDIANA,

Defendants.

CAUSE NO.: 2:26-CV-131-TLS-AZ

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss Plaintiff's Amended Complaint by Town of Winfield, Indiana [ECF No. 37], filed on July 21, 2026. For the reasons set forth below, the Court denies the motion.

## PROCEDURAL AND FACTUAL BACKGROUND

On March 20, 2026, Plaintiff Adam Curry filed a Complaint [ECF No. 2] in this Court, and on June 30, 2026, he filed an Amended Complaint [ECF No. 31], alleging the following relevant facts. On June 9, 2024, the Plaintiff was subjected to a traffic stop of his pickup truck by Defendant Officer Shane. A passenger was seated in the front passenger seat. Officer Shane told the Plaintiff he had been "flying" past him and that he was unable to obtain a radar speed reading. Officer Shane questioned the Plaintiff before returning to his patrol car where he radioed dispatch, stating he would "pull [Curry] out" of his truck and requesting backup.

Officer Shane exited his patrol car and approached the Plaintiff's truck. Defendants Officer Dickerson and Officer Wilson arrived moments later and also approached the Plaintiff's truck. The Plaintiff complied with orders to exit his truck and leaned against the bed of the truck.

When asked by Officer Shane to submit to a field sobriety test, the Plaintiff declined and instead extended his hands, saying that the officers should place handcuffs on him and take him to jail.

Officer Wilson began to place handcuffs on the Plaintiff when Officer Shane shoved the Plaintiff face-first into the bed of the pickup truck, causing a laceration to his chin. Defendant Detective Corporal Billups-Taylor arrived at the scene around this time.

The Plaintiff was tased by Officer Dickerson, fell on the ground, and was tased again approximately thirty seconds later. The Plaintiff was placed in a prone position on his stomach with his hands pinned behind his back by Officer Wilson and Officer Shane, who fastened the handcuffs. The Plaintiff's hands were securely handcuffed behind his back such that he was unable to pose any realistic physical threat to the individual officers.

Officer Dickerson and Detective Corporal Billups-Taylor confronted the passenger in the Plaintiff's vehicle, who expressed concern about the abusive treatment of the Plaintiff. Detective Corporal Billups-Taylor said, "Well when you fight with my officers, I don't give a fuck . . . . He fights with my officers . . . ," and Officer Dickerson completed the sentence, "he get [sic] his ass beat."

When the Plaintiff was still handcuffed and lying helplessly on the ground, Officer Dickerson punched the Plaintiff on his body multiple times while Detective Corporal Billups-Taylor kicked the Plaintiff. One of the officers then punched the Plaintiff on the side of his head with enough force that the Plaintiff's head snapped to the side. Detective Corporal Billups-Taylor then used his fist to forcefully hold the Plaintiff's head on the ground.

While Officer Wilson retrieved leg cuffs, Detective Corporal Billups-Taylor placed his foot on the Plaintiff's back to keep him down. The Plaintiff complained he could not breathe, which prompted Officer Shane to roll him over to his side. The Plaintiff asked to be rolled onto his back. Receiving no response, the Plaintiff asked to be seated upright. The officers refused.

To the passenger, Detective Corporal Billups-Taylor stated, "You bring that fucking turd to our town again, he will go back to jail. For whatever reason. I will find a reason . . . to take him to jail. Keep bringing this piece of shit to our town, he'll go straight to jail. Alright?"

The Plaintiff then lost consciousness, became limp, and remained limp despite Officer Shane shaking and pulling him. The Plaintiff began convulsing and twitching, with increasing severity, consistent with having sustained a traumatic brain injury from being punched in the face, while the officers stood by. The passenger begged the officers to help. Detective Corporal Billups-Taylor dismissed this concern, stating that the Plaintiff was acting. The Plaintiff began to make choking and gagging sounds.

EMS personnel arrived and rolled the Plaintiff onto his back. The Plaintiff was still unconscious and unresponsive to a sternum rub. After a medic lifted the Plaintiff's eyelid, he briefly jolted awake and exhaled deeply. The Plaintiff was lifted to a seated position and then stood up but was almost immediately thrown back to the ground. During the process, the Plaintiff's handcuffs slipped loose, leading officers to again unnecessarily tase him and reapply the handcuffs. The officers placed him in leg irons.

While the Plaintiff was lying prone with his legs crossed behind him, Officer Wilson sat on the Plaintiff's legs and told him, "I'm going to break your leg if you keep moving it." The Plaintiff pleaded for him to get off his legs because he felt his knee was being injured. After the Plaintiff was seen at St. Mary's Hospital, Officer Shane transported him to the Lake County Jail.

The Amended Complaint contains two counts. ECF No. 31. Count I alleges Fourth Amendment excessive force and failure to protect claims under 42 U.S.C. § 1983 against Defendants Officer Paul Shane, Officer George Dickerson, Officer Christopher Wilson, and Detective Corporal Jordan Billups-Taylor. The relevant allegations in Count I are that the

Plaintiff's actions did not justify the use of force and that Town of Winfield officers were present during this use of force and did not move to stop it.

Count II alleges a *Monell* "custom or practice" claim under § 1983 against Defendant Town of Winfield, Indiana, and makes the following additional allegations. Defendant Town of Winfield maintained a widespread or longstanding practice or custom of its police officers engaging in excessive force to punish individuals who were being placed under arrest for purported resistance to arrest or purported fighting with officers. On June 9, 2024, Detective Corporal Billups-Taylor was one of the highest-ranking officers in the Town of Winfield's police force; in January 2025, Billups-Taylor was appointed the interim chief of police. Statements made by Detective Corporal Billups-Taylor endorsing this use of force demonstrate the informal practices and customs of the Town of Winfield's police force that were in effect on June 9, 2024. Detective Corporal Billups-Taylor did not correct or redirect Officer Dickerson's completion of Billups-Taylor's statement, quoted above, that someone who fights with an officer will "get his ass beat" because this was the practice or custom of the Town of Winfield police officers and not a random event.

After that verbal exchange, Detective Corporal Billups-Taylor and other officers engaged in further excessive force upon the Plaintiff while he was handcuffed on the ground, further demonstrating that Billups-Taylor endorsed the practice or custom of using excessive force. On July 14, 2024, Town of Winfield police officers again allegedly used excessive force during the arrest of several family members, resulting in litigation. *See Hobbs v. Town of Winfield*, 2:24-CV-451 (N.D. Ind.). Officer Shane and Detective Corporal Billups-Taylor are defendants in that case.

Finally, Dan Ball was the Town Marshal from the time the Town of Winfield's police department was created in 2014 until he resigned in January 2025. The Town of Winfield was

aware that Ball had a prior disciplinary record, which was for excessive force while he was employed at the Munster Police Department.

The Plaintiff alleges that the Town of Winfield's longstanding practice or custom of this use of excessive force, constituting deliberate indifference to the Plaintiff's constitutional rights, was the moving force that caused the Plaintiff's injury.

Defendant Town of Winfield filed the instant Motion to Dismiss on July 21, 2026. ECF No. 37. The Plaintiff filed a response on August 18, 2026, ECF No. 44, and the Town of Winfield filed a reply on August 25, 2026, ECF No. 46.

**LEGAL STANDARD**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, the Court must accept all the factual allegations as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## ANALYSIS

Defendant Town of Winfield seeks dismissal of Count II of the Amended Complaint, arguing that the Plaintiff has failed to state a claim for *Monell* liability under 42 U.S.C. § 1983. The Plaintiff responds that he has alleged sufficient facts to plausibly allege a widespread or longstanding unofficial policy or custom that was the moving force behind the officers' use of excessive force against him. The Court finds that the Amended Complaint states a claim for *Monell* liability and denies the motion to dismiss.

To state a claim under § 1983, "a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006) (citation omitted). A municipality can only be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To state a claim of municipal liability under *Monell*, a plaintiff must plead factual content that allows the court to draw the reasonable inference that "the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690; *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 674 (7th Cir. 2009)). And the policy or practice must be the "direct cause" or the "moving force" behind the constitutional violation. *Connick v. Thompson*, 563 U.S. 51, 75–76 (2011); *Lee v. Milwaukee County*, 175 F.4th 877, 884 (7th Cir. 2026).

Here, the Plaintiff is expressly proceeding under the second option of an unauthorized governmental practice or custom that is widespread and well settled. To succeed on a de facto

custom theory, "the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (citing *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995)). Thus, at the pleading stage, to allege a widespread policy or custom such that it constitutes a de facto policy with the force of law for *Monell* purposes, a plaintiff "must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Id.* (citing *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011)).

The Amended Complaint alleges sufficient facts to plausibly state a claim for *Monell* liability against Defendant Town of Winfield under this theory. First, the Plaintiff himself experienced several instances of physical violence from different officers during the traffic stop on June 9, 2024, which his conduct did not warrant. As the Plaintiff was initially being handcuffed by Defendant Officer Wilson, Defendant Officer Shane shoved the Plaintiff face-first into the bed of the Plaintiff's pickup truck, causing a cut to his chin. Around this time, Defendant Detective Corporal Billups-Taylor arrived. The Plaintiff was tased by Defendant Officer Dickerson; the Plaintiff fell to the ground and was tased again thirty seconds later. The Plaintiff was then prone on the ground with his hands cuffed behind his back, posing no physical threat to the officers. Detective Corporal Billups-Taylor, who held a higher rank than the three other officers, said to the passenger in the Plaintiff's vehicle, "Well when you fight with my officers, I don't give a fuck . . . . He fights with my officers . . . ," and Officer Dickerson completed the sentence, "he get [sic] his ass beat." Detective Corporal Billups-Taylor, expressing his authority by referencing "my officers," did not correct Officer Dickerson's statement, creating a reasonable inference that this conduct of Town of Winfield officers engaging in excessive force

when confronted with perceived resistance to arrest was already a normal practice or custom in the department.

After this verbal exchange in front of the passenger, Officer Dickerson punched the Plaintiff on his body multiple times while Detective Corporal Billups-Taylor kicked the Plaintiff. One officer punched the Plaintiff on the side of his head with enough force to cause his head to snap back, and Detective Corporal Billups-Taylor then placed his foot on the Plaintiff's back to keep him down. This abusive physical conduct immediately after the verbal comments endorsing excessive force further allows an inference of a regular and widespread course of conduct. And the fact that other officers were present and took no action to stop the use of force is additional support for that inference.

The Plaintiff further alleges that three weeks after the incident on June 9, 2024, another incident of alleged excessive force by Town of Winfield officers occurred. A federal lawsuit was filed, and Officer Shane and Detective Corporal Billups-Taylor were named as defendants. Although that incident occurred after the Plaintiff's, it is close enough in time with some of the same actors to suggest a pattern of conduct.

In January 2025, Detective Corporal Billups-Taylor was appointed the interim chief of police, demonstrating his leadership position within the department, which the Plaintiff reasons further supports a reasonable inference of the informal practice or custom of excessive force that he verbally endorsed on June 9, 2024. Finally, the Plaintiff offers as context for this practice or custom that the head of the Town of Winfield police department from 2014 through January 2025 had been previously disciplined for excessive force while employed with the Munster Police Department, which the Town of Winfield knew when he was hired.

The combination of these facts alleged in the Amended Complaint is not a boilerplate recitation of the elements of a claim nor has the Plaintiff only offered his own experience. The

Plaintiff has raised a reasonable inference at this pleading stage that there was a widespread unofficial practice or custom of using excessive force by Town of Winfield police officers, and the Court denies the motion to dismiss. *See, e.g.*, *White v. City of Chicago*, 829 F.3d 837, 840–41, 843–44 (7th Cir. 2016) (finding that the plaintiff's allegations related to his individual incident were sufficient to state a claim of *Monell* liability for an allegedly unconstitutional policy related to search warrant applications because the plaintiff had also offered the police department's "standard printed form that does not require specific factual support for an application for an arrest warrant"); *compare Gill*, 850 F.3d at 344 (finding that the plaintiff had failed to state a claim of a widespread practice because he did not provide examples of other similar violations or plausibly allege that they existed).

The Court briefly addresses other arguments that do not change this ruling. First, the Plaintiff is not alleging a failure to train or a failure to supervise. Second, Defendant Town of Winfield appears to assert that a plaintiff's complaint must allege a series of violations if the *Monell* claim is based on deliberate indifference. *See* Def. Br. 7–8, ECF No. 38 (discussing cases decided either on summary judgment or after a jury verdict and that are otherwise factually distinguishable (citing *Thomas*, 604 F.3d at 303; *Doe v. Vigo County*, 905 F.3d 1038, 1045 (7th Cir. 2018); *Est. of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005); *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002); *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 234 (7th Cir. 2021) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407–08 (1997)); *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995))). But in *White*, cited above, the Seventh Circuit Court of Appeals held, on a motion to dismiss, that the plaintiff was not required to identify "even one other individual" who had been subjected to the same widespread practice or custom where the plaintiff's claim against one officer together with the police department's standard printed form that did not require specific factual support for an application for an arrest

warrant were sufficient to allege municipal liability for a widespread practice of seeking arrest warrants on the basis of conclusory complaint forms insufficient to find probable cause for the arrest. *See White*, 829 F.3d at 840–41, 843–44. Finally, in its reply brief, Defendant Town of Winfield suggests that the Plaintiff is relying on Detective Corporal Billups-Taylor's statements to create *Monell* liability based on the third category as an official with final policymaking authority. The Court does not understand the Plaintiff to be shifting his theory of the case but rather using the statement of a higher-ranking officer endorsing violence by officers generally, as well as during the Plaintiff's traffic stop, to support a reasonable inference of a widespread practice or custom of engaging in this type of retaliatory excessive force.

## CONCLUSION

Based on the foregoing, the Court DENIES Defendant Town of Winfield's Motion to Dismiss [ECF No. 37].

SO ORDERED on November 4, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT